**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**ABDERRAOUF BOUKARDOUGHA,** **Case No: 6:26-cv-2336**

*Plaintiff,*

vs.

**EXPERIAN INFORMATION SOLUTIONS, INC., and EQUIFAX INFORMATION SERVICES, LLC**

*Defendants.*

_______________________________________/

**PLAINTIFF'S INITIAL COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. Plaintiff, ABDERRAOUF BOUKARDOUGHA ("Plaintiff" or "Mr. Boukardougha"), by and through undersigned counsel, files this Complaint for breach of contract and violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), against EXPERIAN INFORMATION SOLUTIONS, INC. ("Experian") and EQUIFAX INFORMATION SERVICES, LLC ("Equifax").

2. Plaintiff alleges as follows against Experian and Equifax (collectively, "Defendants").

**JURISDICTION AND VENUE**

3. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because this action arises under the FCRA.

4. This Court has supplemental jurisdiction over Plaintiff's related Florida breach-of-contract claims under 28 U.S.C. § 1367 because those claims form part of the same case or controversy as the federal claims.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in Orange County, Florida and the settlement agreements described herein require breach of contract claims to be brought in this District.

## PARTIES

6. Plaintiff is a natural person who, at all times relevant to this action, resided in Orange County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

7. Experian is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), is authorized to do business in Florida, and regularly assembles or evaluates consumer information for the purpose of furnishing consumer reports to third parties.

8. Equifax is a consumer reporting agency as defined by 15 U.S.C. § 1681a(f), is authorized to do business in Florida, and regularly assembles or evaluates consumer information for the purpose of furnishing consumer reports to third parties.

## STATUTORY FRAMEWORK

9. The FCRA requires a consumer reporting agency preparing a consumer report to follow reasonable procedures to assure maximum possible accuracy of the information concerning the consumer. 15 U.S.C. § 1681e(b).

10. After receiving a consumer's direct dispute concerning the completeness or accuracy of information in the consumer's file, a consumer reporting agency must conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of, or delete, the disputed information. 15 U.S.C. § 1681i(a)(1)(A).

11. As part of the reinvestigation, the consumer reporting agency must review and consider all relevant information submitted by the consumer and must delete or modify information that is inaccurate, incomplete, or cannot be verified. 15 U.S.C. § 1681i(a)(4), (5)(A).

12. A consumer reporting agency that negligently fails to comply with the FCRA is liable under 15 U.S.C. § 1681o, and a consumer reporting agency that willfully fails to comply is liable under 15 U.S.C. § 1681n.

## PRIOR SETTLEMENTS

13. On or about May 16, 2024, Plaintiff and Experian entered into a valid, written settlement agreement resolving *Boukardougha v. Bank of America, N.A.*, *et al.*, Case No. 6:22-cv-02002-WWB-DAB, in the United States District Court for the Middle District of Florida.

14. On or about August 28, 2024, Plaintiff and Equifax entered into a separate valid, written settlement agreement resolving *Boukardougha v. Bank of America, N.A. et al.*, Case No. 6:22-cv-02002-WWB-RMN, in the United States District Court for the Middle District of Florida, Orlando Division.

15. Plaintiff performed his obligations and satisfied all conditions precedent under each agreement, or those conditions have occurred or been waived.

16. The agreements contain confidential provisions. Plaintiff therefore does not attach the agreements or plead their confidential terms in this public filing. If the particulars become necessary, Plaintiff will seek appropriate protective relief before submitting them.

**EXPERIAN'S REPORTING**

17. On December 8, 2025, Society Orlando notified Plaintiff that it had obtained a background report from Resident Verify.

18. The notice identified Experian as a source of the credit information and stated that a VantageScore 3.0 had been retrieved on December 1, 2025.

19. It identified as adverse score factors that Plaintiff's oldest account was too recent, that he had too many unpaid collection-agency accounts, that he had too many delinquent or derogatory accounts, and that he lacked sufficient relevant real-estate account information.

20. Thus, Experian located Plaintiff's file and supplied a numerical score and credit information for that housing application.

21. On January 27, 2026, when Plaintiff attempted to apply for motorcycle financing through RiderMarket, LLC, the application system stated: "Your credit profile is locked or missing." It further stated that the application could not be completed because Plaintiff's credit report was missing or had been locked and directed Plaintiff to contact Experian.

22. On February 27, 2026, Santander Consumer USA informed Plaintiff that it could not pre-qualify him for financing through CarMax after obtaining information from Experian, and the notice identified Plaintiff's Experian credit score as "No Score."

23. Experian's consumer disclosure dated March 9, 2026 nevertheless listed seventeen accounts in Plaintiff's file, including open accounts.

24. The disputed inaccuracy was therefore not merely a disagreement about one account balance; it was Experian's inconsistent reporting as to whether Plaintiff had a locatable and usable consumer file and credit score at all, despite Experian maintaining and disclosing account information about him.

**EQUIFAX'S REPORTING**

25. On or about January 28, 2026 Equifax and LeasingDesk Screening supplied information used by Camden North Quarter in evaluating Plaintiff's rental application.

26. On January 28, 2026, Camden North Quarter conditionally approved the application only if Plaintiff obtained a guarantor or paid a security deposit of $1,604.00.

27. The MyEquifax materials included with Plaintiff's dispute displayed an Equifax VantageScore 3.0 characterized as "Poor," and stated "0 points since 12/07/2022." In the factors affecting that score, Equifax stated both "No open bankcard or credit card accounts in your credit file" and "No open accounts in your credit file."

28. The same score-factor display also stated that Plaintiff had "few or no unpaid collection agency accounts," which conflicted with the collection-account description supplied in connection with the Camden housing decision.

29. The MyEquifax dispute center simultaneously displayed an "Open Accounts (4)" account summary. It identified Lead Bank ending in 8694, BESTBUY/CBNA ending in 4870, CLEO/WEBBANK ending in 6466, and VARO BANK ending in 6974 as open accounts. The materials also included a Self Visa credit-card statement ending in 9477 issued by Lead Bank. Those account records directly contradicted Equifax's simultaneous statements that Plaintiff had no open bankcard or credit-card accounts and no open accounts at all.

30. On March 9, 2026, Plaintiff also attempted to obtain his Equifax report through AnnualCreditReport.com, but the system stated that it had experienced an issue processing his request and was unable to process it. In

addition, a Citizens Pay notice stated that it was unable to access Plaintiff's credit report and directed him to contact Equifax to confirm his status. The inaccuracies disputed with Equifax were therefore the contradictory reporting that Plaintiff had no open accounts while four open accounts appeared in Equifax's own portal, the inconsistent descriptions of his collection history, and the inability of Plaintiff and a prospective creditor to obtain a usable Equifax report.

## CONSUMER DISPUTES

31. On March 16, 2026, Plaintiff mailed Experian a written dispute explaining that Experian was alternately reporting a numerical score, "No Score," and a locked or missing credit profile even though Experian maintained account information about him.

32. Plaintiff identified the December 2025 housing report and the corresponding score, the January 2026 RiderMarket "locked or missing" message, the February 2026 "No Score" result furnished to Santander, and the Ally inquiry that appeared in his Experian disclosure.

33. He also stated his concern—without claiming certainty—that Experian might be associating an ITIN ending in 9069 with his Social Security number ending in 4512. Plaintiff supplied identification and supporting documents and asked Experian to reinvestigate and correct or delete the inaccurate information.

34. The documents maintained in Plaintiff's file do not contain a substantive Experian reinvestigation result addressing those identified contradictions.

35. Experian did not correct the disputed condition, and Plaintiff continued to encounter inconsistent results concerning whether Experian could locate and furnish his file and score.

36. On March 16, 2026, Plaintiff mailed Equifax a written dispute explaining that he could not obtain his report through AnnualCreditReport.com and that Equifax's own online materials contained mutually inconsistent information.

37. Plaintiff specifically disputed Equifax's statements that he had "No open bankcard or credit card accounts" and "No open accounts" because the same Equifax portal displayed four open accounts. He also disputed the conflict between Equifax's statement that he had few or no unpaid collection accounts and the adverse housing information describing too many unpaid collection accounts.

38. Plaintiff included identity documents and screenshots showing the numerical score, the score-factor statements, the four-account summary, and the report-access error, and requested a reinvestigation and correction or deletion of the inaccurate information.

39. Equifax's March 28, 2026 response stated that its reinvestigation was complete, but it did not reconcile any of those contradictions or identify a correction

to them. Instead, under "The Results of Our Reinvestigation," Equifax instructed Plaintiff to "BE SPECIFIC WITH YOUR CONCERNS BY LISTING THE ACCOUNT NAMES, NUMBERS AND THE NATURE OF THE DISPUTE."

40. Equifax's response did not address the screenshots and written explanation Plaintiff had supplied showing that Equifax simultaneously reported no open accounts and four open accounts, inconsistent collection information, and an inaccessible report.

## DAMAGES

41. As a result of Experian's inaccurate or materially misleading reporting, Plaintiff was denied the opportunity to pre-qualify for automobile financing through Santander Consumer USA and CarMax.

42. As a result of Equifax's inaccurate or materially misleading reporting, Plaintiff faced a housing condition requiring a guarantor or a $1,604.00 security deposit at Camden North Quarter.

43. Plaintiff also suffered loss of credit and housing opportunities and expended time and effort attempting to identify, dispute, and correct the inaccuracies.

## COUNT I - BREACH OF CONTRACT AGAINST EXPERIAN INFORMATION SOLUTIONS, INC.

44. Plaintiff incorporates paragraphs 1 - 7, 9 - 13, 15 - 24, 31 - 35, 41, and 43 as though fully set forth herein.

45. Under Florida law, a breach-of-contract claim requires a valid contract, a material breach, and resulting damages. *Miller v. Nifakos*, 655 So. 2d 192, 193 (Fla. 4th DCA 1995).

46. Plaintiff and Experian entered into a valid and binding written settlement agreement during 2024.

47. Plaintiff performed his obligations and satisfied all conditions precedent under the agreement, or those conditions have occurred or been waived.

48. Experian materially breached one or more obligations imposed by the agreement. The particulars arise from confidential provisions and are omitted from this public pleading; Plaintiff will seek appropriate protective relief before submitting those particulars if they become necessary.

49. As a direct and proximate result of Experian's breach, Plaintiff suffered damages.

50. The written settlement agreement authorizes an award of reasonable attorneys' fees, disbursements, and costs to the prevailing party in an action arising from a breach of the agreement. Plaintiff seeks that contractual relief.

**WHEREFORE,** Plaintiff requests judgment against Experian for damages caused by the breach, reasonable attorneys' fees, disbursements, and costs as authorized by the agreement, all other relief available under applicable law, and such further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT AGAINST EQUIFAX INFORMATION SERVICES, LLC

51. Plaintiff incorporates paragraphs 1 - 6, 8 – 12, 14 – 16, 25 – 30, 36 – 40, and 42 - 43 as though fully set forth herein.

52. Under Florida law, a breach-of-contract claim requires a valid contract, a material breach, and resulting damages. Miller v. Nifakos, 655 So. 2d 192, 193 (Fla. 4th DCA 1995).

53. Plaintiff and Equifax entered into a valid and binding written settlement agreement during 2024.

54. Plaintiff performed his obligations and satisfied all conditions precedent under the agreement, or those conditions have occurred or been waived.

55. Equifax materially breached one or more obligations imposed by the agreement. The particulars arise from confidential provisions and are omitted from this public pleading; Plaintiff will seek appropriate protective relief before submitting those particulars if they become necessary.

56. As a direct and proximate result of Equifax's breach, Plaintiff suffered damages. The written settlement agreement authorizes an award of reasonable attorneys' fees and costs to the prevailing party in an action to enforce or remedy a breach of the agreement. Plaintiff seeks that contractual relief.

**WHEREFORE**, Plaintiff requests judgment against Equifax for damages caused by the breach, reasonable attorneys' fees, disbursements, and costs as

authorized by the agreement, all other relief available under applicable law, and such further relief as the Court deems just and proper.

**COUNT III**
**VIOLATION OF 15 U.S.C. § 1681i AGAINST EXPERIAN INFORMATION SOLUTIONS, INC.**

57. Plaintiff incorporates paragraphs 1 - 7, 9 - 13, 15 - 24, 31 - 35, 41, and 43 as though fully set forth herein.

58. Experian is a consumer reporting agency, and Plaintiff is a consumer, as defined by the FCRA.

59. Experian received Plaintiff's written dispute concerning the completeness and accuracy of information in his Experian file.

60. Experian failed to conduct a reasonable reinvestigation, failed to review and consider all relevant information submitted by Plaintiff, and failed to correct or delete the disputed inaccurate or materially misleading information, in violation of 15 U.S.C. § 1681i.

61. Experian's violations were willful, rendering it liable under 15 U.S.C. § 1681n. In the alternative, Experian's violations were negligent, rendering it liable under 15 U.S.C. § 1681o.

62. As a direct and proximate result, Plaintiff suffered actual damages, including lost credit opportunities and the time and effort expended attempting to correct his file.

**WHEREFORE**, Plaintiff requests actual damages, statutory damages, punitive damages, reasonable attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

**COUNT IV**
**VIOLATION OF 15 U.S.C. § 1681i AGAINST EQUIFAX INFORMATION SERVICES, LLC**

63. Plaintiff incorporates paragraphs 1 - 6, 8 – 12, 14 – 16, 25 – 30, 36 – 40, and 42 - 43 as though fully set forth herein.

64. Equifax is a consumer reporting agency, and Plaintiff is a consumer, as defined by the FCRA.

65. Equifax received Plaintiff's written dispute concerning the completeness and accuracy of information in his Equifax file.

66. Despite the detailed dispute and supporting screenshots, Equifax failed to conduct a reasonable reinvestigation, failed to review and consider all relevant information submitted by Plaintiff, and failed to correct or delete the disputed inaccurate or materially misleading information, in violation of 15 U.S.C. § 1681i.

67. Equifax's violations were willful, rendering it liable under 15 U.S.C. § 1681n. In the alternative, Equifax's violations were negligent, rendering it liable under 15 U.S.C. § 1681o.

68. As a direct and proximate result, Plaintiff suffered actual damages, including lost housing opportunities and the time and effort expended attempting to correct his file.

**WHEREFORE**, Plaintiff requests actual damages, statutory damages, punitive damages, reasonable attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

## COUNT V - VIOLATION OF 15 U.S.C. § 1681e(b) AGAINST EXPERIAN INFORMATION SOLUTIONS, INC.

69. Plaintiff incorporates paragraphs 1 - 7, 9 - 13, 15 - 24, 31 - 35, 41, and 43 as though fully set forth herein.

70. Experian is a consumer reporting agency, and Plaintiff is a consumer, as defined by the FCRA.

71. Experian prepared and furnished a consumer report concerning Plaintiff to Santander Consumer USA that identified Plaintiff's credit score as "No Score," despite Experian's file containing multiple accounts, including open accounts.

72. Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the consumer report, in violation of 15 U.S.C. § 1681e(b).

73. Experian's violations were willful, rendering it liable under 15 U.S.C. § 1681n. In the alternative, Experian's violations were negligent, rendering it liable under 15 U.S.C. § 1681o.

74. As a direct and proximate result, Plaintiff suffered actual damages, including the loss of an automobile-financing opportunity and related time and effort.

**WHEREFORE**, Plaintiff requests actual damages, statutory damages, punitive damages, reasonable attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

**COUNT VI**
**VIOLATION OF 15 U.S.C. § 1681e(b) AGAINST EQUIFAX INFORMATION SERVICES, LLC**

75. Plaintiff incorporates paragraphs 1 - 6, 8 – 12, 14 – 16, 25 – 30, 36 – 40, and 42 - 43 as though fully set forth herein.

76. Equifax is a consumer reporting agency, and Plaintiff is a consumer, as defined by the FCRA.

77. Equifax and LeasingDesk Screening prepared and furnished a consumer report concerning Plaintiff for Camden North Quarter that identified too many unpaid collection-agency accounts and an unsatisfactory credit history.

78. Equifax's reporting was inaccurate or materially misleading in light of the contradictory information Equifax maintained and displayed concerning Plaintiff's open accounts and unpaid collections.

79. Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning Plaintiff in the consumer report, in violation of 15 U.S.C. § 1681e(b).

80. Equifax's violations were willful, rendering it liable under 15 U.S.C. § 1681n. In the alternative, Equifax's violations were negligent, rendering it liable under 15 U.S.C. § 1681o.

81. As a direct and proximate result, Plaintiff suffered actual damages, including adverse housing terms and related time and effort.

**WHEREFORE**, Plaintiff requests actual damages, statutory damages, punitive damages, reasonable attorneys' fees, litigation expenses and costs, and such other relief as the Court deems just and proper.

**DEMAND FOR A JURY TRIAL**

82. Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
**DEBT SHIELD LAW**
*/s/ Kevin Rajabalee, Esq.*
Kevin Rajabalee, Esq.
Florida Bar No. 119948
3440 Hollywood Boulevard, Suite 415
Hollywood, Florida 33021
Main: 754-800-5299
Direct: 954-667-3096

Fax: 305-503-9457
kevin@debtshieldlaw.com
dayami@debtshieldlaw.com
service@debtshieldlaw.com
*Lead Counsel for Plaintiff*